**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

WILLIAM LYNN FOLEY,            )
on his own behalf and as father      )
and next friend of A.F., a minor, et al.   )
                                                )
                Plaintiffs,         )
        vs.                                )        **Case No. 1:09-cv-01147-RB-GBW**
                                                )
CARLSBAD MUNICIPAL SCHOOLS,  )
Alta Vista Middle School, a schools   )
organized and operating under the laws  )
of the State of New Mexico, et al.   )
                                                )
                Defendants.        )

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on School Defendants' Motion to Dismiss Plaintiff's First Amended Complaint and for Qualified Immunity (Doc. 13), wherein School Defendants ask the Court to dismiss Counts I and VII with prejudice.  Having considered the First Amended Complaint, the parties' memoranda, the relevant case law, and otherwise being fully informed, the Court dismisses Counts I and VII against School Defendants without prejudice.

**II.        PROCEDURAL AND FACTUAL BACKGROUND**

On February 22, 2010, Plaintiffs filed a First Amended Complaint for Civil Rights Violations, alleging seven counts of wrongdoing against sixteen Defendants and seeking monetary damages under 42 U.S.C. § 1983.  Plaintiffs claim violations of their federal constitutional rights under the Fourth and Fourteenth Amendments. (FAC ¶ 49.)  On July 13, 2010, Defendants Carlsbad Municipal Schools, Superintendent Ron Owen, and Assistant Principal Miles Caddell (School Defendants) filed a motion to dismiss the claims against them. (Doc. 13.)  School Defendants assert any claims brought under Count I of the First Amended Complaint must be dismissed under *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 545 (2007) because Plaintiffs failed to allege sufficient facts to state a claim for relief that is plausible on its face and/or provide fair notice as to the basis of the claims against them (Doc. 14 at 6–7); furthermore, School Defendants assert they are shielded from liability by qualified immunity. (Doc. 14 at 7–10.) School Defendants additionally assert any claims brought against them under Count VII of the First Amended Complaint must be dismissed as Plaintiffs' allegations are conclusory and fail to establish that a School Defendants' custom or policy was the moving force behind the alleged constitutional violations. (Doc. 14 at 10–12.)

Count I of the First Amended Complaint alleges School Defendants violated the Fourth and Fourteenth Amendment rights of A.F., a fourteen-year-old student at the Alta Vista Middle School, and therefore, Plaintiffs are entitled to monetary damages under 42 U.S.C. § 1983. (FAC ¶¶ 48–69.) At approximately 10:00 a.m. on December 5, 2007, Alta Vista Middle School Principal Patricio Lujan summoned A.F. to his office. (FAC ¶ 51.) A.F. was questioned by Assistant Principal Miles Caddell about allegations that marijuana had been distributed at school. (FAC ¶ 54.) A.F.'s detention continued for the next two hours. At around 12:00 noon, Officers Allen Sanchez and Daniel Vasquez of the Carlsbad Police Department arrived at the school, having been summoned by Principal Lujan and Assistant Principal Caddell. (FAC ¶ 52.) Plaintiffs allege that Defendants Lujan, Caddell, Sanchez, and Vasquez then proceeded to question A.F. in an aggressive, coercive, intimidating, and threatening manner. (FAC ¶¶ 53, 57, 59.) Furthermore, in contrast to the male students who were seized as part of the investigation, A.F. alleges that she was not allowed to contact her parents or have them present during the questioning. (FAC ¶ 56.) As a result of the questioning, A.F. made incriminating statements, and these statements were used by Principal Lujan to suspend A.F. from school for ten days, by Superintendent Ron Owen to expel A.F. from Alta Vista Middle School, by Carlsbad Municipal Schools to convert her grades for the semester to Fs,

2

and by officers to obtain a search warrant and file juvenile charges against her. (FAC ¶¶ 58–60.)

Count VII of the First Amended Complaint alleges School Defendants are liable under § 1983 for setting policies and procedures that encouraged unlawful acts against students and by being deliberately indifferent to Plaintiffs' constitutional rights. (FAC ¶¶ 108–17.)  Specifically, Plaintiffs allege that the Carlsbad Municipal Schools maintained a policy of permitting school administrators and law enforcement to engage in the use of excessive force, unlawful searches and seizures, and similar acts of misconduct, or in the alternative, maintained *de facto* policies of ignoring such actions. (FAC ¶ 112.)

## III.  LEGAL STANDARD

"A § 1983 complaint needs but two allegations to state a cause of action: (1) that the plaintiff was deprived of a federal right; and (2) that the person who deprived him acted under color of state law." *Choate v. Lemmings*, 294 F. App'x 386, 392 (10th Cir. 2008) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).  It is uncontested that School Defendants are state actors; therefore, the only question before the Court is whether School Defendants deprived A.F. of a federal right.  School Defendants request dismissal of the claims against them under Federal Rule of Civil Procedure 12(b)(6), asserting Plaintiffs failed to plead sufficient facts to show the violation of a federally-protected right, or in the alternative, they are entitled to qualified immunity. (Doc. 14 at 4.)

"[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.' " *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  Accordingly, when reviewing the sufficiency of a complaint under Rule 12(b)(6), the Court "must determine whether the complaint sufficiently alleges facts supporting *all the elements* necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007) (emphasis

added).  This obligation to provide the factual "grounds" upon which the plaintiff is entitled to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  Finally, in making its determination, the Court must accept all well-pleaded factual allegations as true, viewing them in the light most favorable to Plaintiffs, and drawing reasonable inferences therefrom. *Id.* at 555–56; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In conjunction with their motion to dismiss, School Defendants also raise a defense of qualified immunity. (Doc. 14 at 7.)  "Although summary judgment provides the typical vehicle for asserting a qualified immunity defense," it may also be asserted in the context of Rule 12(b)(6). *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).  Thus, when considering a Rule 12(b)(6) motion in the context of qualified immunity, a trial court may dismiss a complaint for failure to state a claim where the plaintiffs failed to allege facts establishing a plausible constitutional violation, or it is clear that the constitutional rights plaintiffs assert were not clearly established. *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (explaining that plaintiff bears a "heavy two-part burden" once defendant invokes qualified immunity).

## IV.    ANALYSIS

### A.    Count I: Interrogation of A.F., a Child

In Count I, Plaintiffs assert that A.F.'s seizure and subsequent questioning by School Defendants violated her Fourth Amendment right to be free from unreasonable searches and seizures.  Plaintiffs' allegations also point to other potential violations of A.F.'s rights under the United States Constitution, although the First Amended Complaint does not specifically identify which constitutional protections were violated.  While this lack of a cogent legal theory makes the Court's job more difficult, it does not necessarily require dismissal.  Indeed, a complaint should not

4

be dismissed under Rule 12(b)(6) merely because it fails to identify the proper legal theory upon which it should proceed or identifies the wrong legal theory; provided the factual allegations make out a plausible claim for relief, that is sufficient. *Bowers v. Hardwick*, 478 U.S. 186 (1986), *overruled on other grounds, Lawrence v. Texas*, 539 U.S. 558 (2003); *Barrett v. Tallon*, 30 F.3d 1296, 1299 (10th Cir. 1994).  What follows is a summary of the possible Fourth, Fifth, and Fourteenth Amendment violations raised by Plaintiffs in Count I of the First Amended Complaint and an analysis of whether dismissal is appropriate with regard to each potential claim.

### 1.    *Fourth Amendment Claim for Unreasonable Seizure*

Based on Count I of the First Amended Complaint (FAC ¶¶ 49–50) and Plaintiffs' Response to Defendants' Motion to Dismiss (Doc. 23 at 4–5), Plaintiffs' primary legal theory appears to be that Defendants violated A.F.'s Fourth Amendment right to be free from unreasonable searches and seizures.  Nonetheless, Plaintiffs fail to allege sufficient facts for the Court to plausibly conclude that the seizure was not supported by reasonable suspicion or probable cause, or that it was excessively intrusive in light of the seriousness of the suspected offense and the surrounding circumstances. *See Iqbal*, 129 S. Ct. at 1951–52.  As these are important elements in a Fourth Amendment claim for unreasonable seizure in the school context, the Court concludes that Plaintiffs have failed to state a plausible claim for relief. *Robbins*, 519 F.3d at 1247; *Forest Guardians*, 478 F.3d at 1160.

The ultimate measure of whether a search or seizure is constitutional is whether it was reasonable under all the circumstances. *New Jersey v. T.L.O.*, 469 U.S. 325, 341–42 (1985); *Terry v. Ohio*, 392 U.S. 1, 20–21 (1968).  This reasonableness determination requires a two-part inquiry: first, the Court must ask whether the search or seizure was justified at its inception; and second, the Court must consider whether the scope of the search or seizure was justified in light of the seriousness of the offense and the surrounding circumstances. *New Jersey v. T.L.O.*, 469 U.S. at 341.

5

"Minors, as well as adults, are protected by the Constitution and possess constitutional rights." *Planned Parenthood of Missouri v. Danforth*, 428 U.S. 52, 74 (1976).   Thus, the Fourth Amendment's protections extend to the school context, protecting students from unreasonable searches and seizures by public school officials. *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995); *New Jersey v. T.L.O.*, 469 U.S. at 336–37.

In determining the reasonableness of a search or seizure in the school setting, the Court must balance the government's interest in protecting the health and welfare of students against the privacy interest of the individual. *Vernonia Sch. Dist. 47J*, 515 U.S. at 660–61; *19 Solid Waste Dept. Mechanics v. Albuquerque*, 156 F.3d 1068, 1072 (10th Cir. 1998); *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 480 (5th Cir. 1982) ("school officials have both a right and a duty to provide a safe environment conducive to education").   Accordingly, for a search or seizure to be justified at its inception, school officials need only possess a reasonable suspicion that a student is violating the law or school rules. *New Jersey v. T.L.O.*, 469 U.S. at 341–42.   This relaxed standard of suspicion is applied in the school context due to the heightened governmental interest in maintaining the safety of the educational environment and ensuring its conduciveness to learning, discipline, and the inculcation of students with manners and civility. *Safford United Sch. Dist. #1 v. Redding*, 129 S. Ct. 2633, 2639 (2009); *Vernonia Sch Dist. 47J*, 515 U.S. at 657; *New Jersey v. T.L.O.*, 469 U.S. at 341–42; *Edwards v. Rees*, 883 F.2d 882, 884 (10th Cir. 1989).

> When society requires large groups of students, too young to be considered capable of mature restraint in their use of illegal substances or dangerous instrumentalities [to mandatorily attend school], it assumes a duty to protect them from dangers posed by anti-social activities—their own and those of other students—and to provide them with an environment in which education is possible.  To fulfill that duty, teachers and school administrators must have broad supervisory and disciplinary powers.

*Horton*, 690 F.2d at 480.  Thus, in balancing the school's interests against the student's privacy

interest, the Court must take into account public schools' "custodial and tutelary responsibility for children" in determining what is reasonable. *Vernonia Sch. Dist. 47J*, 515 U.S. at 656.

Plaintiffs allege that A.F. was questioned in regard to allegations that marijuana had been distributed at her middle school. (FAC ¶ 54.) Plaintiffs do not allege that School Defendants did not possess an individualized, reasonable suspicion that A.F. had distributed the drugs, participated in their unlawful distribution, purchased some of the drugs, or violated the law or school rules in some other manner. On these factual allegations, Plaintiffs apparently ask the Court to infer that school officials randomly selected A.F. from among the student body, with no reasonable suspicion of wrongdoing, and unjustifiably called her to the principal's office to harass her. However, as between the more obvious alternative explanation for her seizure—that the school officials suspected A.F. was involved in the distribution of the marijuana or had purchased marijuana—and what Plaintiffs ask the Court to infer, it is simply not a "plausible conclusion" that School Defendants acted unreasonably. *Iqbal*, 129 S. Ct. at 1951–52; *Twombly*, 550 U.S. at 567. "[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Elkins v. United States*, 364 U.S. 206, 222 (1960). Plaintiffs have not alleged sufficient facts to establish a plausible claim that the seizure was unjustified at its inception.

It is curious, therefore, that while the First Amended Complaint contains no allegations that the initial seizure and questioning of A.F. were based on less than reasonable suspicion, Plaintiffs' Response alleges that there was "less than a minimal chance of finding criminal activity" and that A.F.'s detention was "unjustified." (Doc. 23 at 5.) The Response, however, does not identify any grounds to support these conclusions. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555. Consequently, if

7

Plaintiffs intend to pursue a theory that the initial seizure was unlawful, they must request leave to file a second amended complaint, as the factual allegations of the First Amended Complaint are not sufficient to support a plausible claim for relief and fail to put Defendants on notice that such a claim is intended. *Twombly*, 550 U.S. 544; *Gee v. Pacheco*, --- F.3d ----, 2010 WL 4909644, at *5 (10th Cir. Dec. 2, 2010); FED. R. CIV. P. 8(a).

Were this the end of the Fourth Amendment's protections, it would also be the end of the Court's inquiry; however, the Fourth Amendment extends further:  in addition to being justified at its inception, a search or seizure cannot be excessively intrusive under the circumstances—i.e., every search must also be reasonable in scope. *New Jersey v. T.L.O.*, 469 U.S. at 341.  For instance, using force to seize a student is unreasonable if the school official exceeds the amount of force necessary to safely effectuate a seizure under the circumstances. *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985). Similarly, strip searching an entire classroom of students over the theft of $12 is overly intrusive in the circumstances. *See H.Y. v. Russel Cty. Bd. of Educ.*, 490 F. Supp. 2d 1174 (M.D. Ala. 2007).

While the First Amended Complaint does not allege that a lack of reasonable suspicion made the initial seizure unreasonable, it does contain factual allegations intimating that the seizure and subsequent questioning of A.F. may have been unreasonable in scope: (1) Plaintiffs allege that the seizure and subsequent interrogation continued for more than two hours (FAC ¶¶ 51–52); (2) Plaintiffs allege that A.F. was not allowed to contact her parents or have them present during the interrogation (FAC ¶¶ 56); and (3) Plaintiffs allege that School Defendants acted in a coercive, intimidating, and threatening manner. (FAC ¶¶ 53 & 57).  As previously mentioned, these allegations may implicate other constitutional rights as well.  The Court will deal with them in turn, but at this point, it will focus solely on whether the allegations are sufficient to establish a plausible claim under the Fourth Amendment that the scope of the seizure was unreasonable.

8

In determining whether the scope of a seizure was reasonable, the Court must consider the reasonableness of the seizure in light of the relevant circumstances—the seriousness of the suspected offense, the level of suspicion possessed by the school officials, the age of the suspect, the length of the detention, and the conditions of the seizure. *New Jersey v. T.L.O.*, 469 U.S. at 342; *Edwards*, 883 F.2d at 884. Based on the factual allegations of the First Amended Complaint, it is apparent that A.F.'s seizure was motivated by allegations marijuana had been distributed at her school—a serious offense for middle school students. (FAC ¶ 54.) The First Amended Complaint does not indicate, however, whether the officers suspected A.F. of having distributed the drugs, or whether A.F. provided any information to the officers to confirm or dispel their suspicions. Ultimately, the level of intrusiveness that was justified depends on the level of suspicion the officers possessed and the level of threat posed to the students. Subjecting a student to two hours of intense questioning would likely exceed the bounds of reasonableness for a fourteen-year old if School Defendants possessed only minimal suspicion of criminal wrongdoing and failed to confirm these suspicions. On the other hand, two hours is likely reasonable if School Defendants had reasonable suspicion to believe that students at the school were in possession of a dangerous narcotic, and that A.F. was involved in its distribution and could provide them with the identity of those students.

When there is a threat to discipline or the safety of the school environment, school officials may respond in a manner that is rationally related to maintaining discipline and securing the safety of the students. *Mitchell v. Bd. of Trustees of Oxford Mun. Separate Sch. Dist.*, 625 F.2d 660, 665 (5th Cir. 1980). Thus, an important factor in determining the reasonableness of a seizure is the threat posed to the students. In the case at hand, the public's interest in ensuring that middle school students are not exposed to dangerous and addictive illegal narcotics is substantial.

Deterring drug use by our Nation's schoolchildren is at least as important as

9

> enhancing efficient enforcement of the Nation's laws against the importation of
> drugs . . . . School years are the time when the physical, psychological, and addictive
> effects of drugs are most severe.  Maturing nervous systems are more critically
> impaired by intoxicants than mature ones are; childhood losses in learning are
> lifelong and profound; children grow chemically dependent more quickly than
> adults, and their record of recovery is depressingly poor. . . .  And of course the
> effects of a drug-infested school are visited not just upon the users, but upon the
> entire student body and faculty, as the educational process is disrupted.  In the
> present case, moreover, the necessity for the State to act is magnified by the fact that
> this evil is being visited not just upon individuals at large, but upon children for
> whom it has undertaken a special responsibility of care and direction.

*Vernonia Sch. Dist. 47J*, 515 U.S. at 662.  Accordingly, School Defendants' motivations for seizing and questioning the students when they learned that drugs had been distributed at the school were undeniably compelling.  To overcome this compelling governmental interest to keep schoolchildren safe from illegal narcotics, Plaintiffs must minimally allege a lack of individualized, reasonable suspicion and/or that the seizure was "excessively intrusive in light of the age and sex of the student and the nature of the infraction." *New Jersey v. T.L.O.*, 469 U.S. at 342.

The First Amended Complaint does not provide the Court with any allegations relating to the School Defendants' level of suspicion of criminal wrongdoing during the seizure, and Plaintiffs' allegations that the questioning was coercive are conclusory and do little to assist the Court in determining whether the questioning was reasonable in light of A.F.'s age and gender.  It was Plaintiffs' burden to allege "facts supporting *all the elements* necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians*, 478 F.3d at 1160.  Based on the First Amended Complaint, however, it is simply not a plausible conclusion that School Defendants acted without individualized suspicion that A.F. violated the law or a school rule.  Similarly, with regard to the reasonableness of the scope of the seizure, what is conspicuously absent is any indication that school officials had dispelled their concerns over student safety or criminal wrongdoing by A.F., that the school officials overreacted to the level of threat, or that A.F. was not involved in the distribution

10

or purchase of marijuana at the school.  In considering whether a complaint states a plausible claim for relief, the Court must draw on its "common sense." *Iqbal*, 129 S. Ct. at 1950.  Without any factual allegations to support Plaintiffs' inference that School Defendants lacked reasonable suspicion or probable cause to continue their questioning of A.F., or that the continued questioning was unreasonably intrusive in light of the seriousness of the offense, the Court cannot plausibly conclude that School Defendants exceeded the bounds of reasonableness in the circumstances.

"The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) [unreasonableness] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.' " *Twombly*, 550 U.S. at 557 (quoting FED. R. CIV. P. 8(a)(2)).  Thus, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; but, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949 (internal quotations omitted).  Plaintiffs factual allegations raise the possibility of a Fourth Amendment violation, but they do not reach the level of plausibility.

Before *Twombly*, dismissal was appropriate only where "it appear[ed] beyond doubt that the plaintiff [could] prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).  Accordingly, "a complaint was immune from dismissal if it left open the possibility that a fact not alleged in the complaint could render the complaint sufficient." *Robbins*, 519 F.3d at 1246.  Plaintiffs mistakenly identify this "no set of facts" standard as that which the Court must apply in the case at hand (Doc. 23 at 1 & 6); however, *Twombly* did away with this standard.  Plaintiffs argue that a claim can only be dismissed where there is no plausible/conceivable set of facts that might later be shown.  In the post-*Twombly* era,

11

such bare bones pleadings require dismissal.

Furthermore, even assuming that Plaintiffs had successfully stated a plausible claim, School Defendants are still entitled to qualified immunity, as the conduct alleged did not violate clearly established Fourth Amendment law. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Chapman v. Nichols*, 989 F.2d 393, 397 (10th Cir. 1993).  In general, "[a] right is 'clearly established' if Supreme Court or Tenth Circuit case law exists on point or if the 'clearly established weight of authority from other circuits' found a constitutional violation from similar actions." *Peterson*, 371 F.3d at 1202 (quoting *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999)).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640 (internal citation omitted).  Thus, even if certain conduct has not been previously held unconstitutional, when it is so patently offensive that its unconstitutionality cannot be in doubt, qualified immunity will not apply. *Safford United Sch. Dist. #1*, 129 S. Ct. at 2643.  In other words, the facts only need be "sufficiently analogous to satisfy the particularized context necessary to support liability." *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007).

In general constitutional law terms, it is clearly established that the Fourth Amendment's strictures apply in the school context and that the seizure of a student carried out by a school official must be reasonable under the circumstances. *See Veronia Sch. Dist. 47J*, 515 U.S. at 652; *Terry*, 392 U.S. at 20–21.  However, Plaintiffs were required to go beyond merely identifying general legal principles. *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988).  Upon School Defendants' invocation of a defense of qualified immunity in their Motion to Dismiss (Docs. 13 & 14), Plaintiffs acquired the burden of articulating specific case law to support

their theory for relief. *Walker v. City of Orem*, 451 F.3d 1139, 1151 (10th Cir. 2006) ("Plaintiffs had the burden in response to defendants' motion to dismiss, of articulating such clearly-established law."); *Pueblo Neighborhood Health Centers, Inc.*, 847 F.2d at 645 ("The plaintiff carries the burden of convincing the court that the law was clearly established.").

In their Response (Doc. 23 at 4–5), Plaintiffs point to *Safford United Sch. Dist. #1*, 129 S. Ct. 2633 and *New Jersey v. T.L.O.*, 469 U.S. 325 as establishing the constitutional limitations for searches and seizures in the school context. *Safford United Sch. Dist. # 1* was decided on June 25, 2009. The events in the case at hand occurred on December 5, 2007. Accordingly, while *Safford United Sch. Dist. #1* was applicable in terms of determining the reasonableness of the search in our above analysis, it does not apply to the Court's determination of whether the constitutional right was clearly established at the time of the alleged violation. *Anderson*, 483 U.S. at 639. Accordingly, in considering whether Plaintiffs have carried their burden on qualified immunity, the Court must look to *New Jersey v. T.L.O.*

*New Jersey v. T.L.O.,* 469 U.S. at 340–42*,* establishes a few important constitutional principles: (1) the Fourth Amendment's protections apply in the context of school searches; (2) searches of students are evaluated under a relaxed reasonable suspicion standard; and (3) "a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." Scope may be defined as the "length" of the seizure, as in *Edwards*, 883 F.2d at 884, where the Tenth Circuit concluded that questioning a student for twenty minutes concerning a bomb threat was reasonable. Or, scope may be defined in terms of the "intrusiveness" of the seizure on a student's liberty interests, as in *Nicol v. Auburn-Washburn USD 437*, 231 F. Supp. 2d. 1092, 1100–01 (D. Kan. 2002), where a school security officer was alleged to have shoved a student

and put her in a headlock.

In the case at hand, the seizure was more than two hours in length, A.F. was not permitted to contact her parents, and the school officials were alleged to have questioned her in a coercive, intimidating, and threatening manner. Given that School Defendants believed a dangerous narcotic had been distributed at school and was in the possession of students, that Plaintiffs failed to allege School Defendants lacked reasonable suspicion, and that Plaintiffs failed to allege any facts indicating the use of excessive force, the Court cannot conclude that School Defendants violated clearly established case law that would have been apparent to a reasonable person at the time. Plaintiffs failed to identify any case law indicating that, when faced with such a serious threat to students, school officials are prohibited from conducting a prolonged, non-violent interrogation or denying a phone call to parents. In *Safford Unified Sch. Dist. #1*, 129 S. Ct. at 2643, the Supreme Court specifically stated that the strip search of the thirteen-year-old female student was unreasonable because there was no "indication of danger to the students." In contrast, School Defendants were faced with a clear and present danger. While the case law does not identify how far school officials may go in their efforts to protect students, School Defendants would not have believed at the time of the seizure that they were prohibited from seizing and non-violently questioning a thirteen-year-old student to protect the health and safety of the students and to maintain discipline.

Additionally, Plaintiffs did not offer any cases concluding that seizures of students by school officials beyond a certain length of time are unconstitutional, and at least the Fourth Circuit has expressly rejected such an approach. *Wofford v. Evans*, 390 F.3d 318, 323 (4th Cir. 2004) ("we decline to announce a . . . ban on detentions of a certain length"). The Circuits' unwillingness to conclude that prolonged student detentions in the school context are unreasonable may be due to the

fact that students' liberty interests are already constrained, and thus, for a seizure to be unreasonable, "the limitation on the student's freedom of movement must significantly exceed that inherent in every-day, compulsory attendance." *Couture v. Bd. of Educ. of Albuquerque Sch.*, 535 F.3d 1243, 1251 (10th Cir. 2008); *see also Vernonia Sch. Dist.*, 515 U.S. at 653 ("unemancipated minors lack some of the most fundamental rights of self-determination—including even the right to come and go at will"). In other words, students are effectively seized for the entire day, and the only way a seizure becomes unreasonable is if a student's liberty is significantly curtailed beyond what is customary in a school setting. *See, e.g.*, *Couture*, 535 F.3d at 1255 (concluding that repeatedly confining a student for prolonged periods of time in a dimly lit closet with no exterior window and construction paper over the window constituted a seizure, but that school officials were still entitled to qualified immunity).

School Defendants are also entitled to qualified immunity on Plaintiffs' claim that the seizure was unreasonable because A.F. was not allowed to contact her parents or have them present during the interrogation. Again, Plaintiffs do not point to any clearly established constitutional right that juveniles must have their parents present during questioning by police or school officials. The fact New Mexico law establishes a rebuttable presumption that confessions obtained from a fourteen-year-old are inadmissible in Court, N.M. STAT. ANN. § 32A-2-14(F), does not indicate that School Defendants violated A.F.'s Fourth Amendment rights. Other states have similar provisions providing special protections for juveniles, and some states do indeed require that parents be present in order for a confession to be admissible. *See, e.g.*, *State v. M.A.L.*, 765 P.2d 787 (Okla. Ct. Crim. App. 1988). The New Mexico statute, however, merely protects against confessions obtained from minors due to the coercive effect authority figures have on adolescents. Of course, one way to remedy this danger would be to require that students only be questioned in the presence of their

parents or counsel (this is apparently what the Oklahoma statute requires), but this is not what the

NM statute requires.  Furthermore, the Tenth Circuit has never recognized such a right, and the

Fourth Circuit has specifically declined to recognize any such constitutional requirement. *Wofford*,

390 F.3d at 323 ("we decline to announce a requirement of parental notification").

Lastly,  "[t]o the extent that [Plaintiffs] 'seek[] relief for alleged violations of state statutes

and prison regulations . . . , [they have] stated no cognizable claim under § 1983,' which establishes

a cause of action only for deprivation of rights secured by the Constitution or federal law." *Trujillo*

*v. Williams*, 465 F.3d 1210, 1214 n. 2 (10th Cir. 2006) (quoting *Gaines v. Stenseng*, 292 F.3d 1222,

1225 (10th Cir. 2002)).  "The issue is whether [school officials] violated the Constitution, not

whether [they] should be disciplined by the local police force." *Smith v. Freland*, 954 F.2d 343, 347

(6th Cir. 1992).

      2.    *Fifth Amendment Right Against Self-Incrimination Through Coerced*
          *Statements and Fourteenth Amendment Substantive Due Process Right to be*
          *Free from Coercive Questioning*

Ultimately, Plaintiffs' claim that A.F.'s confession was coerced may be better addressed

under the Fifth and Fourteenth Amendments:

> In evaluating detainee's claim, Judge Friendly applied neither the Fourth
> Amendment nor the Eighth, the two most textually obvious sources of constitutional
> protection against physically abusive governmental conduct.  Instead, he looked to
> substantive due process, holding that quite apart from any specific of the Bill of
> Rights, application of undue force by law enforcement officers deprives a suspect of
> liberty without due process of law.

*Graham v. Connor*, 490 U.S. 386, 392 (1989); *see also Rochin v. California*, 342 U.S. 165 (1952).

When excessive force is used to effect a seizure, this is clearly a Fourth Amendment issue, *Graham*,

490 U.S. at 395, but when physical violence or other forms of excessive force are used to extract a

confession, such cases are generally handled under the Fifth or Fourteenth Amendments. *See Chavez*

16

*v. Martinez*, 538 U.S. 760 (2003).  The Court could not find, however, any case law in the Tenth Circuit where mere "coercive questioning" of a suspect, without the application of actual physical force, resulted in a constitutional violation.

Although Plaintiffs do not specifically allege a Fifth Amendment violation, Plaintiffs' complaint appears to allege that the interrogation was unconstitutional because A.F. was coerced into making incriminating statements that were later used against her.   Nonetheless, A.F.'s statements were never used against her at trial, only to secure an arrest warrant and file juvenile charges.  *Miranda v. Arizona*, 394 U.S. 436 (1966), makes clear that the use of coerced statements against a defendant at trial is unlawful, but says nothing about using them to secure a warrant or to file juvenile charges.  Accordingly, the Court "fail[s] to see how, based on the text of the Fifth Amendment, [Plaintiffs] can allege a violation of this right, since [A.F.] was never prosecuted for a crime let alone compelled to be a witness against [her]self in a criminal case." *Chavez*, 538 U.S. at 766.  "[M]ere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness." *Id*. at 769.  This does not mean that police have free rein to torture or inflict physical abuse during an interrogation as long as no statements are used at trial; it only "means that the Fourteenth Amendment's Due Process Clause, rather than the Fifth Amendment's Self-Incrimination Clause, would govern the inquiry in those cases and provide relief in appropriate circumstances." *Id*. at 773.

Under the Due Process Clause of the Fourteenth Amendment, no person shall be deprived "of life, liberty, or property without due process of law." CONST. AMEND. XIV.  In addition to procedural due process rights, the clause also provides certain "substantive" due process rights, such as the right to be free from excessively brutal or coercive interrogation. *Chavez*, 538 U.S. at 765. Where police interrogation techniques are " 'so brutal and so offensive to human dignity' that they

17

'shoc[k] the conscience,' " they violate the Fourteenth Amendment and "give rise to § 1983 liability." *Id.* at 774 (quoting *Rochin*, 342 U.S. at 172 (overturning conviction where there was evidence of involuntary stomach pumping)); *see also Jefferson v. Ysleta Ind. Sch Dist.*, 817 F.2d 303, 305–06 (5th Cir. 1987) (concluding defendants were not entitled to dismissal where school officials tied student to his chair with a jump rope during two consecutive school days).  "In school discipline cases, the substantive due process inquiry is whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Harris v. Robinson*, 273 F.3d 927, 930 (10th Cir. 2001) (internal quotations omitted).

While public school students are entitled to substantive due process rights at school, *Wood v. Strickland*, 420 U.S. 308, 326 (1975), these rights are necessarily "circumscribed by the need for effective and often immediate action by school officials to maintain order and discipline." *Hassan v. Lubbock Ind. Sch. Dist.*, 55 F.3d 1075, 1080–81 (5th Cir. 1995).  Accordingly, when there is a threat to discipline, safety, or the health of the students, school officials may respond in a manner that is rationally related to protecting the students and maintaining order and discipline. *Mitchell*, 625 F.2d at 665.  Still, the use of actual physical force to maintain order is rarely acceptable, as public school students have a "right to be free of state-occasioned damage to a person's bodily integrity." *Schillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir. 1981).  In the end, without factual allegations that A.F. was tied up with a jump rope, slapped, placed in a closet, had her thumbs squeezed, or suffered some other violation of her bodily integrity, Plaintiffs allegations that the interrogation was coercive, intimidating, and threatening are not sufficient to establish a plausible claim for violation of A.F.'s substantive due process rights.

18

### 3. Fourteenth Amendment Equal Protection Claim

In Count I, Plaintiffs also allege what appears to be an equal protection claim: "Other minors besides A.F. were questioned.  Contrary to the case of A.F., who is female, these minors, who are male, were permitted to contact their parents and to have their parents present for these interrogations." (FAC ¶ 55.)  The Fourteenth Amendment provides that no State shall "deny to any person . . . the equal protection of the laws." Const. Amend. XXIV.  "Equal protection 'is essentially a direction that all persons similarly situated should be treated alike.' " *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  Thus, under the Equal Protection Clause, government officials and entities cannot invidiously discriminate in their enforcement of the law or their treatment of individuals. *See, e.g.*, *Smith v. Ross*, 482 F.2d 33, 36–37 (6th Cir. 1973).

In addition to disparate treatment, Plaintiffs must allege discriminatory intent: "To sustain a claim under the Equal Protection Clause, a plaintiff must provide evidence that he was treated differently from others who are similarly situated to him, and that the acts forming the basis of the plaintiff's claim were motivated by a discriminatory purpose." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1179 (10th Cir. 2003).  In the case at hand, there are no allegations School Defendants intended to discriminate against A.F. based on gender.  One way to show discriminatory intent is to allege facts demonstrating a departure from established practices, *Nabozny v. Podlesny*, 92 F.3d 446, 455 (7th Cir. 1996) (citing *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 267 (1977)); however, Plaintiffs make no factual allegations concerning the School's established practices in disciplinary situations.  In the end, the factual allegations are insufficient for the Court to plausibly conclude that the disparate treatment occurred for an invidious, discriminatory purpose. *Iqbal*, 129 S. Ct. at 1952; *Gee*, 2010 WL 4909644 at *4.

####         4.        *Fourteenth Amendment Right to Procedural Due Process*

Plaintiffs further allege that "[a]s a result of [her] expulsion, Defendant Carlsbad Municipal

Schools, without prior notice to A.F. or her parents, and without benefit of a hearing, converted all

of her grades, which had been well above a 3.0 grade point average, to 'F's, with a full three weeks

remaining in the semester." (FAC ¶ 60.)  While Plaintiffs do not identify what constitutional right

was violated, it appears Plaintiffs claim a violation of A.F.'s right to procedural due process.

The Fourteenth Amendment prohibits a State from depriving a person of life, liberty, or

property, without due process of law. CONST. AMEND. XIV.  "A person alleging that he 'has been

deprived of his right to procedural due process' must prove two elements: [1] that he possessed a

constitutionally protected liberty or property 'interest such that the due process protections were

applicable,' and [2] that he was not 'afforded an appropriate level of process.' " *Zwygart v. Bd. of

Cty. Comm'rs of Jefferson Cty.*, 483 F.3d 1086, 1093 (10th Cir. 2007) (quoting *Farthing v. City of

Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994)).  "When complete deprivation of education occurs,

such as when a student is removed from the school for a lengthy time period, . . . the student at

minimum is entitled to 'notice and . . . some kind of hearing . . . .' " *Couture*, 535 F.3d at 1257.

Plaintiffs do not allege, however, that School Defendants failed to provide adequate due

process when A.F. was suspended and expelled; rather, Plaintiffs assert School Defendants failed

to give her notice and hearing when her grades were changed to Fs following her expulsion.  Yet,

the First Amended Complaint states A.F. was given a suspension notice (FAC ¶ 58); and

furthermore, it is completely devoid of any allegations that A.F. did not receive a hearing.  While

it is clear that a public school student has a due process right to "some kind of notice and . . . some

kind of hearing," prior to a disciplinary suspension or expulsion, it is not clear that a student has a

right to a separate hearing when her grades are changed following an expulsion. *Goss v. Lopez*, 419

U.S. 565, 579 (1975).  Accordingly, Plaintiffs failed to state a plausible claim for relief.

### B.      Count VII: Organizational Policy

In Count VII, Plaintiffs allege School Defendants either maintained an official policy of permitting school administrators to engage in the use of excessive force, unlawful searches and seizures, and other acts of police misconduct, or in the alternative, they maintained a *de facto* policy of ignoring such actions. (FAC ¶ 112.)  In *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694–95 (1978), the Supreme Court determined that under § 1983, a municipality may not be held liable under a theory of *respondeat superior* or vicarious liability for the acts of its officers. Thus, to hold a school district or school administrators liable under § 1983 for the acts of their employees, "a plaintiff must show not only that a constitutional violation occurred, but also that some municipal policy or custom was the moving force behind the violation." *Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1320 (10th Cir. 1998).  The simple act of employing someone who violates another's constitutional rights is not sufficient. *Monell*, 436 U.S. at 694–95.

The First Amended Complaint is completely devoid of any allegations of an express policy, a pattern of inappropriate conduct evincing the existence of an unofficial policy or custom, or any indication that Superintendent Owen or Principal Caddell had final policymaking authority or that someone with final policymaking authority approved their conduct. *See Murrell*, 186 F.3d at 1249 (concluding that one way to show a municipal policy or custom is to present facts indicating unlawful actions were "taken by an official with final policy making authority"); *Curtis v. Oklahoma City Public Sch. Bd. of Educ.*, 147 F.3d 1200, 1216 (10th Cir. 1998). Plaintiffs assert that such a policy or custom may be "inferred by the obviousness of the facts." (FAC ¶ 113.)  However, without any factual allegations demonstrating an express policy or a history of such violations, this conclusion is simply not plausible. *Iqbal*, 129 S. Ct. at 1952; *Twombly*, 550 U.S. at 555.

V.      **CONCLUSION**

The Court grants in part School Defendants' Motion to Dismiss Counts I and VII.  In Count I, Plaintiffs alleged insufficient facts to establish a plausible claim for relief.  Additionally, a grant of qualified immunity is appropriate, as a reasonable person would not have known at the time of the alleged incidents that School Defendants' actions violated clearly established constitutional law.  The Court therefore dismisses Count I against School Defendants without prejudice.  The Court also dismisses Count VII against School Defendants without prejudice, as Plaintiffs' allegations were conclusory and failed to establish that a policy or custom established by School Defendants was the moving force behind the alleged constitutional violations.


**WHEREFORE**,

**IT IS HEREBY ORDERED** that School Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint and for Qualified Immunity (Doc. 13) is **GRANTED IN PART and DENIED IN PART**.


_____
**ROBERT BRACK**
**UNITED STATES DISTRICT JUDGE**

22